```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

TF by p/n/f Shannon F.

    v.                                Civil No. 14-cv-368-JL
                                      Opinion No. 2016 DNH 108

Portsmouth School District
SAU 52 and Kenneth Kimber


**MEMORANDUM ORDER**


This civil rights action, brought under a theory of municipal liability through 42 U.S.C. § 1983, turns on whether the Portsmouth school district injured the minor plaintiff through its policies or customs and, more to the point, whether the plaintiff has raised a dispute of material fact as to the existence of such a policy or custom. The plaintiff, Shannon F., seeks to recover from the Portsmouth School District School Administrative Unit 52 ("Portsmouth"), on behalf of her minor daughter, T.F., for a sexual assault perpetrated by one of its employees, defendant Kenneth Kimber. She brought claims against Portsmouth and Kimber for alleged violations of her Fourth and Fourteenth Amendment rights, see 42 U.S.C. § 1983, as well as common-law claims for assault, battery, negligence, and intentional and negligent infliction of emotional distress. This court has jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

The court entered a default judgment against Kimber on October 28, 2014.  Portsmouth moved for summary judgment on the civil rights and common-law claims asserted against it.  In response, the plaintiff withdrew her common-law claims against Portsmouth (Counts 2-7), leaving only her civil rights violation claim (Count 8) pending.  After hearing oral argument, and for the reasons discussed below, the court grants Portsmouth's motion for summary judgment on that claim.  The plaintiff has not raised a dispute of material fact as to the existence of a school district policy or custom that resulted in the violation of her Fourth or Fourteenth Amendment rights.

I.  **Applicable legal standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial, and "material" if it could "sway the outcome under applicable law."  Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the factual record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has properly supported [her] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [she] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [her] favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-35). "[T]he non-moving party 'may not rest upon mere allegation . . . but must set forth specific facts showing that there is a genuine issue for trial.'" Braga v. Hodgson, 605 F.3d 58, 60 (1st Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving" parties.  Estrada, 594 F.3d at 62.

II.  **Background**

This brief outline of the facts takes the approach described above.  Kimber, an information technology technician employed by Portsmouth, used Facebook to send messages and naked photographs of himself to TF, a ninth-grader at Portsmouth High School, during the 2012-2013 school year.  On February 4, 2013, Kimber sexually assaulted TF at his apartment.  The assault was reported and Kimber was arrested.  Kimber ultimately pled guilty to felonious sexual assault.

3

After Kimber's arrest, Portsmouth put Kimber on unpaid administrative leave, barred him from entering school grounds, and subsequently fired him.  Portsmouth also searched his user share on its file server[1] and found a hidden folder, entitled "YEP," which contained photos of individuals, including Kimber himself, in various stages of undress.

TF, through her parent and next friend, Shannon F, brought this suit against Kimber and Portsmouth.  Kimber defaulted.  Portsmouth then moved for judgment on the pleadings.  Given the nature of the motion -- incorporating, as it did, facts outside of those recited in the complaint -- the court converted that motion to one for summary judgment and subsequently denied it without prejudice in light of the plaintiff's request for time to conduct discovery under Fed. R. Civ. P. 56(d).  See Order of June 19, 2015 (document no. 28).  That discovery having been conducted, Portsmouth moved for summary judgment.

### III. **Analysis**

As an initial matter, the plaintiff has voluntarily dismissed all but one of her claims against Portsmouth.  Specifically, she "does not object to the dismissal of Counts

---

[1] As plaintiff's counsel explained at oral argument, Kimber's user share was a section of Portsmouth's server accessible through Kimber's user account, and on which he was able to store files.

Two through Seven as to defendant [Portsmouth]." Obj. (document no. 43) at 1.  This concession resolves the plaintiff's common law claims against the school district.[2]  The court accordingly dismisses, with prejudice, counts two through seven of the complaint as against Portsmouth.

The plaintiff's only claim remaining against Portsmouth, then, is Count 8 -- an alleged violation by Portsmouth of T.F.'s Fourth and Fourteenth Amendment rights under a theory of municipal liability.  See 42 U.S.C. § 1983; Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978). Under Monell and its progeny, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" for alleged constitutional violations arising from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  Id.  A plaintiff seeking "to impose liability on local governments under § 1983 must prove that

---

[2] This includes the plaintiff's claims against Portsmouth under theories of negligence and vicarious liability for assault, battery, intentional and negligent infliction of emotional distress, and "[v]iolation of the rights otherwise guaranteed to TF, under the laws and constitutions of the State of New Hampshire and the United States."  Compl. ¶¶ 18-29.

'action pursuant to official municipal policy' caused their injury."  Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell, 436 U.S. at 691).

> The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997).[3]

Such liability under § 1983 "can be found only 'where the municipality itself causes the constitutional violation at issue.  Respondeat superior or vicarious liability will not attach under § 1983.'"  Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989)).  Thus, "recovery from a municipality is

---

[3] While this observation has no bearing on, and plays no role in, the court's analysis of the plaintiff's claim as alleged in the complaint, it is worth noting that the situation described by the facts alleged -- the sexual assault of a student by a high school staff member away from school grounds -- does not immediately or intuitively invoke notions of a civil rights violation under the Fourth and Fourteenth Amendments.  Indeed, the plaintiff has not cited a single reported or unreported example of such a case and, at oral argument, plaintiff's counsel confirmed that their research revealed no such case.  This court's research similarly found no examples.  This is not to say that the plaintiff's claim is not colorable under applicable law; rather, it is only to observe that the plaintiff's theory has little or no precedent of record.

limited to acts that are, properly speaking, acts 'of the municipality' -- that is, acts which the municipality has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).

While the court does not question the plaintiff's good faith in bringing this suit or advancing its arguments against summary judgment, it struggled to some degree in identifying the articulation of such a policy in the plaintiff's summary judgment briefing. It therefore held a telephone conference in advance of oral argument, during which plaintiff's counsel explained that the municipal policy or custom that the plaintiff here invokes as the basis of her Monell claim is this: Portsmouth conspicuously failed to enforce certain existing school district policies concerning sexual harassment or assault and appropriate use of the school district computer systems, thus inviting its employees -- such as Kimber -- to violate them. See Obj. (document no. 43) at 3-4 (citing Casablanca (Warner Bros. 1942); The Wire: Hamsterdam (HBO television broadcast Oct. 10, 2004)). Counsel explained that this theory amounts to "99%" of the plaintiff's claim; she reserves "1%" for the allegation that Portsmouth had "customs" or "de facto policies" that harmed the plaintiff. Indeed, counsel's candor is appreciated as his oral explanation of these theories is

7

consistent with his briefing. The court addresses each of these theories in turn.

### 1. Existing policies

The plaintiff's briefing is not altogether clear as to precisely which policies, guidelines, or customs she claims that Portsmouth conspicuously failed to enforce. As best the court can make out, they fall into two categories. The first comprises those raised in the complaint: policies, guidelines, or customs of monitoring Portsmouth's employees so as to prevent "improper sexual contact with students" and to screen, supervise, and/or discipline its employees "for their propensity for improper contact with students." Compl. ¶¶ 32-33. The second comprises those alluded to in the plaintiff's objection to Portsmouth's motion for summary judgment: policies or customs relating to proper use of district computers.

As to the first, Portsmouth has introduced evidence that, during the 2012-2013 school year, it had policies forbidding school employees from "engag[ing] in a physical relationship of a sexual nature of any kind with a student of the Portsmouth School Department regardless of the age of the student while the student is enrolled in the school system," see Mot. for Summary Judgment Ex. G (document no. 42-11) at 10, and forbidding "any employee to harass other employees, students, parents or others

participating in programs, services and/or activities provided by the school board, through conduct or communication of a sexual nature," as defined in the policy, see id. at 12.  Such defined conduct includes, inter alia, "unwelcome sexual advances, requests for sexual favors and other verbal, nonverbal or physical conduct of sexual nature," and may also "include use of cell phones or the Internet."  Id. at 12-13.  Portsmouth having produced these policies and asserted facts as to their enforcement,[4] the burden shifts to the plaintiff to demonstrate a dispute of material fact as to whether the school district had a policy of conspicuously failing to enforce these policies.  See DeNovellis, 124 F.3d at 306.  The plaintiff has not done so here.

    The plaintiff offers no evidence that would allow a finder of fact to conclude that "the . . . officials responsible for establishing final policy with respect to" sexual assault and

---

[4] It is important to note here that the plaintiff does not challenge the substance or content of these policies as set forth or adapted.  Her challenge, again, is to the school district's capricious lack of enforcement, inviting violation.  The plaintiff illustrates this challenge through allusion to the movie Casablanca, where Rick's Café flourished despite a presumptive prohibition against gambling in Morocco, and the television series The Wire, in which police officers attempted to control illegal drug activity in Baltimore as a whole by diverting it to a section of the city, called Hamsterdam, where laws against drug possession and distribution went conspicuously unenforced.

harassment in the school district made "a deliberate choice" not to enforce those policies "from among various alternatives . . . ." Pembaur, 475 U.S. at 483. The plaintiff points only to the fact that Kimber interacted with students in the hallways of the school and used the school's exercise facilities without censure as evidence that Portsmouth conspicuously failed to enforce its harassment or assault policies. See Obj. (document no. 43) at 4. While the parties do not appear to dispute that Kimber did, at times, interact with students in the hallways of the school, or that he used the school's exercise facilities on at least one occasion, allegations of mere interaction with students on school grounds, without more, does not appear to evince a violation of these policies, much less a deliberate choice by school district officials to permit or invite violation. This is especially true in the absence of any evidence that Kimber interacted with, stalked, or groomed TF, or any other student, while in school hallways or the school's exercise facilities.

As to use of school district computers, Portsmouth has also introduced evidence that, during the 2012-2013 school year, it had policies concerning responsible and acceptable use of school computers and the school district computer network. Mot. for Summary Judgment Ex. G (document no. 42-11) at 1-7. Portsmouth's appropriate computer use policy, while reserving

10

the school district's right to monitor network activity, does not outline a policy of active monitoring. Rather, it "relies on the honor of its students and staff to exercise appropriate . . . and responsible use of computers and Internet access." Id. at 4. The parties do not dispute that Kimber stored inappropriate pictures on a laptop issued by the school district and on the school district's network. Nor do the parties dispute that, in doing so, Kimber violated those policies. The plaintiff argues, rather, that the school district's supervision of Kimber was so lax and its failure to enforce these policies so conspicuous as to invite him to violate them. And that policy of failing to supervise or discipline Kimber, the plaintiff concludes, created the environment that allowed Kimber believe he could assault TF, also with impunity.

    The plaintiff balances this argument on two pillars. First, the plaintiff relies on the report of her expert,[5] Jean

---

[5] The plaintiff leans generally on the entirety of Ms. Heffner's report and deposition as outlining policies and practices that Portsmouth ought to have had in place "to better protect students." See Obj. (document no. 43) at 6. Such an approach runs afoul of the requirement that

> a party asserting that a fact . . . is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Heffner, who opined that certain inadequacies in Portsmouth's network implementation were "directly and indirectly culpable for the abuse of the network by . . . Kimber."[6] Heffner Report (document no. 43-7) at 4. Without opining on the appropriateness of the school district's "honor system" of enforcement set out in the policy itself, Heffner concludes that, had Portsmouth implemented three procedures, it could have discovered the "YEP" folder and disciplined Kimber -- or at least watched him more closely -- at some point before he assaulted TF. Specifically, she explains, Portsmouth failed to "scan[] the system regularly with an IP scanner, audit[] the use of all administrative account holders and their actions and on a regular basis, and implement[] a robust incident response structure."[7] Id. In her deposition, Heffner expanded on the effect that implementing these policies and procedures would

---

Fed. R. Civ. P. 56(c)(1). It is incumbent on the plaintiff, not the court, to dig through Ms. Heffner's report and deposition transcript to identify those portions supporting (or defining) the plaintiff's position.

[6] Notably, Heffner does not opine that those inadequacies were culpable for the abuse of T.F. by Kimber.

[7] She also opined that the school district should have used an "email filter to restrict the proliferation of inappropriate photographs in email by restricting certain attachments based on their format such as .jpg which is the most common format used in phones and cameras." Heffner Report (document no. 43-7) at 3. The applicability of this recommendation to this case is undermined by the lack of any evidence suggesting that Kimber sent or received any inappropriate photographs by email.

have had on the Kimber's use of Portsmouth's server. Implementing IP scanners would have allowed district IT supervisors to see the "YEP" folder, even though it was hidden. Heffner Dep. (document no. 43-6) at 121:12-122:2. Regular reviews of audit logs would have informed district IT supervisors that Kimber had created new folder, named "YEP," on the server.[8]  Id. at 126:4-22, 133:20-134:19, 135:4-14.  Finally, regular meetings between IT supervisors and employees who had administrator credentials, such as Kimber, would have allowed the district to refresh the employees' understanding of what is and is not appropriate use of those credentials.  Id. at 130:2-132:2.  Heffner elides the fact, however, that none of these policies or procedures would have alerted the district to the inappropriate nature of the contents of the "YEP" folder without some suspicion on the district's part that would cause IT supervisors to investigate it.  And plaintiff has offered no evidence supporting such a suspicion.  Accordingly, while Heffner's opinion may suggest that the school district has room

---

[8] At oral argument, plaintiff's counsel sought and obtained the court's leave to supplement the record with information concerning the date of the "YEP" folder's creation, which the plaintiff did.  See document no. 47.  Portsmouth, given the opportunity to respond, declined to do so.  The court concludes, for the reasons discussed in this section, that the date of the folder's creation has no bearing on Portsmouth's conspicuous unenforcement (or lack thereof) of its computer use policies.

13

to improve its supervision of its IT staff's conduct, does not support a conclusion that Portsmouth had a municipal policy of conspicuous failure to enforce its computer use policies.

For the second pillar of her conspicuous non-enforcement argument, the plaintiff contends that Portsmouth should have scrutinized Kimber's computer use after an incident in November 2012, when Kimber reacted poorly to an email that he saw on a school librarian's computer. The parties do not dispute the facts of the event. While remotely connected to a librarian's computer to provide requested IT support, Kimber saw an email from that librarian to another employee, which was open on her desktop, and which spoke unflatteringly of him. He responded by emailing the librarian about her comments, for which he was disciplined. Though the plaintiff suggests that this event should have prompted Portsmouth to investigate Kimber's computer use, the evidence does not support that suggestion. As the plaintiff's expert concludes, Kimber's access of the librarian's computer was within not only the bounds of Portsmouth's computer use policies, but also Kimber's job duties. See Heffner Report (document no. 43-7) at 3 ("the use of remote desktop access by [Kimber] to access a teacher's desktop/laptop was within the limits prescribed for an information technician."). To the extent that the email Kimber sent violated Portsmouth's computer use policies -- and it is unclear to the court whether the

14

plaintiff argues that it does -- Portsmouth's reaction in disciplining Kimber counters, rather than supports, the plaintiff's suggestion that Portsmouth failed to enforce its policies and this invited Kimber to violate them.[9]  Nor is there any evidence that facts of this incident -- an employee contacting another for criticizing him behind his back -- would raise concerns about (a) potential misuse of school district computers or (b) inappropriate contact between that employee and students.  And even if it had, a single instance of failure to discipline an employee does not amount to "an adequate basis for municipal liability under Monell."  Santiago, 891 F.2d at 382 (failure to discipline officer on two occasions does not amount to "evidence of a failure to discipline sufficiently widespread to reflect a municipal policy" and defeat summary judgment).

The plaintiff here has failed to demonstrate that a dispute of material fact exists as to issues on which she carries the

---

[9] The plaintiff relies on Sango v. City of New York, No. 83 CV 5177, 1989 WL 86995, at *17 (E.D.N.Y. July 25, 1989), wherein the District Court for the Eastern District of New York concluded that the city's failure to investigate four separate complaints that a given officer had beaten people without provocation "might well have led him to believe that he could engage with impunity in misconduct such as that alleged" in that case.  Sango is inapposite.  Here, the plaintiff concedes that Portsmouth disciplined Kimber for the email incident.  And that is the only incident of Kimber's computer-related malfeasance, aside from the existence of the hidden "YEP" folder, that the plaintiff alleges that Portsmouth was or should have been aware of.

burden at trail -- specifically, demonstrating that Portsmouth had a policy of conspicuously failing to enforce existing, written policies concerning employee interaction with students and use of the school district computer system.

### 2. Non-existent policies

The court turns, then, to the remaining "1%" of the plaintiff's argument: that school district de facto policies or customs caused the district to ignore additional "red flags" that should have prompted the district to monitor Kimber's computer use. While the court is not unsympathetic to a minor plaintiff victimized by a predatory school district employee, it does not find this argument persuasive as a matter of civil rights law under the Monell municipal liability doctrine.

Following on the plaintiff's lack-of-supervision arguments with respect to existing policies, the plaintiff here argues that Portsmouth had a custom of not performing required yearly evaluations of its employees' performances. A failure to evaluate Kimber on a yearly basis, the argument goes, caused Portsmouth to ignore behaviors by Kimber that would have triggered closer school district scrutiny and, had the district monitored him, it would have noticed the hidden "YEP" folder and, hence, his violation of the acceptable use policy. See Obj. (document no. 43) at 4. As an initial matter, on the facts

presented by the parties, the district had a policy -- formal or otherwise -- of reviewing its employees annually.  See McDonough Dep. (document no. 43-5) at 64-65.  And, the unrebutted evidence of record suggests that Kimber was evaluated on a yearly basis.  Plaintiff cites the deposition testimony of Kimber himself and of Portsmouth's network administrator, Thomas Lotz, for the contrary proposition.  See Obj. (document no. 43) at 4.  Kimber never testified as much, however, see Kimber Dep. (document no. 43-1) at 46, and Lotz testified that he reviewed Kimber's performance over the course of the year, albeit informally, see Lotz Dep. (document no. 43-3) at 64 (district IT administrator performed informal performance reviews of Kimber "[a]nd failing any objections yearly, he would continue to be employed.").  Thus, the plaintiff's theory fails at its initial premises -- that Portsmouth had a custom of not reviewing its employees' performance.

Finally, untethered from any particular policy, the plaintiff contends that the school district should have monitored Kimber more closely in light of what it knew or should have known about his conduct, years earlier, as a high school student at Portsmouth High School.  As a high school senior, the teenaged Kimber moved in with an acquaintance, from whom he stole a check and cashed it.  To the extent that Kimber intends, by this, to argue municipal liability resulting from failure to

17

sufficiently screen an employee before hiring him, Portsmouth is still entitled to summary judgment because the plaintiff, on the undisputed facts presented, cannot lead a reasonable fact finder to the conclusion that Portsmouth was "deliberately indifferent" in its hiring decision. See Brown, 520 U.S. at 410-11. "[A] finding of culpability" under this theory "must depend on a finding that this [employee] was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." Id. at 412. The connection between cashing a stolen check and sexual assault is not "strong" so as to satisfy this requirement.

## IV.  Conclusion

The plaintiff attempts, through her Monell claim against Portsmouth, to impose liability on the school district for the off-campus actions of one of its employees under the theory that the school district's conspicuous failure to enforce its policies against sexual harassment and improper computer usage caused the employee to violate the plaintiff's civil rights.  As noted above, counsel has not provided, and the court has not been able to locate, any authority in which a school district has been held responsible under § 1983 in related circumstances.

Nor do the circumstances here warrant such a conclusion, where the plaintiff has not demonstrated that a reasonable factfinder could conclude that Portsmouth conspicuously failed to enforce its policies or had a de facto policy or custom that could have caused the plaintiff's injury. In the absence of a dispute of material fact on this score, the court grants Portsmouth's motion for summary judgment on Count 8 of the complaint. As discussed supra, the plaintiff has voluntarily withdrawn Counts 2-7 as against the school district; those claims are, accordingly, dismissed with prejudice.

**SO ORDERED.**

/s/ Joe Laplante
Joseph N. Laplante
United States District Judge

Dated: July 12, 2016

cc: Justin Caramagno, Esq.
    Lawrence A. Vogelman, Esq.
    Dona Feeney, Esq.
    Katherine E. Spillane, Esq.