## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

T.F. by p/n/f Shannon F.

    v.                                        Case No. 14-cv-368-JL

Portsmouth School District
SAU 52, et al.

### REPORT AND RECOMMENDATION

The plaintiff, Shannon F., brings this civil rights action under 42 U.S.C. § 1983 as parent and next friend of her minor daughter, T.F.  T.F. was sexually assaulted by defendant Kenneth Kimber when she was a ninth-grader at Portsmouth High School. At the time of the assault, Kimber was employed by the school as an Information Technology ("IT") technician.  The plaintiff alleges that Kimber and the Portsmouth School District SAU 52 ("School District") violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

On October 28, 2014, the Clerk of Court entered default against Kimber for failure to appear.  On July 12, 2016, after nearly two years of litigation, the district judge entered summary judgment in favor of the School District.  See July 12, 2016 Order (doc. no. 49).  The plaintiff then moved, under Federal Rule of Civil Procedure 55, for an entry of default judgment against Kimber.  (Doc. no. 52.)  This motion was

referred to the undersigned magistrate judge, who, subsequent to a telephonic conference with plaintiff's counsel, issued a procedural order requesting additional briefing related to the motion.  (Doc. no. 53.)  Plaintiff's counsel submitted this briefing on December 14, 2015 (hereinafter "supplemental briefing").  (Doc. no. 57.)

For the reasons discussed below, the court recommends that the district judge deny the plaintiff's motion for default judgment.

## Standard of Review

When a defendant is defaulted for failing to appear or respond, he is "taken to have conceded the truth of the factual allegations in the complaint . . ." Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002) (quoting Franco v. Selective Ins. Co., 184 F.3d 4, 9 n. 3 (1st Cir. 1999).  Before entering a default judgment, however, the court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcón v. Autoridad de Energía Electríca, 301 F.3d 1, 2 (1st Cir. 2002) (quoting Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992)).  "[A] court may also consider any affidavits or evidence on the record." Amguard Ins. Co. v. Santos Remodeling, Inc., No. 14-cv-14745-FDS, 2016 WL 424961, at

*1 (D. Mass. Feb. 3, 2016) (citing KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 17–20 (1st Cir. 2003)).  At its discretion, the court may "conduct hearings . . . to . . . establish the truth of any allegation by evidence . . . ," Fed. R. Civ. P. 55(b)(2)(c), though "only if the court has made its requirements known in advance to the plaintiff, so that [she] could understand the direction of the proceeding and marshal[] such evidence as might be available to [her,]"  Ramos-Falcón, 301 F.3d at 3.

## Background

### I.   Allegations in the Complaint

As is relevant to her claim against Kimber, the plaintiff makes the following allegations in her amended complaint.  T.F. was born in 1998.  First Amend. Compl. ¶ 8 (doc. no. 16).  During the relevant period, she was a student at Portsmouth High School.  Id.  At that time, Kimber was employed by the School District as an IT technician at Portsmouth High School.  Id. ¶ 9.

During the 2012–2013 academic year, Kimber "use[d] his position of trust and authority, arising solely and directly from his position as an employee of [the School District], to

groom [T.F.[1]]"  Id. ¶ 13.  Between January of 2013 and February 13, 2013, Kimber "began to sexually, emotionally, and mentally abuse T.F."  Id.  This abuse "occurred both on and off school property and began through the use of school resources."  Id.

The abuse continued until Kimber was arrested.  Id. ¶ 14. On October 7, 2013, Kimber pleaded guilty to felonious sexual assault and other crimes in Rockingham County Superior Court. Id. ¶ 15.  On November 14, 2013, he was sentenced to three-to-eight years of incarceration.  Id.

The plaintiff alleges that Kimber was "acting under color of state law."  Id. ¶ 16.  She further alleges that Kimber's conduct "was not done in good faith and was done intentionally, maliciously, and sadistically, with a deliberate indifference to the rights of [T.F.]" and was done "unnecessarily and wantonly with the purpose of causing harm and inflicting pain . . . in violation of [T.F.'s] constitutional rights to bodily integrity, equal protection, and due process . . . ."  Id.

## II.  **Other Facts in the Record**

This case is somewhat unique in that considerable litigation occurred after Kimber was defaulted.  Accordingly,

---

[1] In her first amended complaint, the plaintiff refers to T.F. by her initials, but without separating periods.  Going forward, the court will separate T.F.'s initials with periods without otherwise indicating an alteration of the quoted source.

there are documents in the record from which a more complete narrative of the events alleged by the plaintiff can be extracted.  These documents include, among other things, several affidavits and the deposition testimony of Shannon F., T.F., Kimber, and others.  From these documents, the court constructs the following factual narrative.[2]

On August 10, 2009, the School District officially hired Kimber as an IT Technician.  McDonough Aff. ¶ 13, March 19, 2015 (doc. no. 22-5) ("McDonough Aff. I").  In this capacity, Kimber was involved in "the setup and maintenance of technology equipment and software for use by students and staff . . . and assisting the Network Administrator service the information technology needs of the [School] District."  Id. ¶ 15.  This job description required little, if any, contact with students on school property, and no contact with students off school grounds.  Id. ¶¶ 16-17; Lotz Aff. ¶ 5, March 23, 2016 (doc. no. 42-3); see also McDonough Dep. at 48, September 21, 2016 (doc. no. 43-5).  The school district issued Kimber a laptop that he was permitted to take home with him after school hours.  Lotz Aff. ¶ 9.

---

[2] In her supplemental briefing, the plaintiff contends that the court need not consider additional facts in the record.  (Doc. no 57, at 5.)  The court rejects this argument for the reasons discussed in greater detail below.  See infra at 16-18.

T.F. met Kimber when she was a student at Portsmouth Middle
School.  T.F. Dep. 78–79, Aug. 25, 2015 (doc. no. 43-2).  She
first encountered him "wander[ing] the hallways" and
"interacting with students . . ."  Id.  She had further
encounters with him when she was on the eighth grade basketball
team, as Kimber was in apparent relationship with T.F.'s
basketball coach and would often be present at the team's
practices.  Id. at 78.  At some point during this period, T.F.
came home from school and informed her mother, Shannon F., that
she had met Kimber, who had been a classmate of Shannon F.'s at
Portsmouth High School.  Shannon F. Dep. at 43-44, Aug. 25, 2015
(Doc. no. 43-4).  Shannon F. also independently observed Kimber
at the middle school during a visit with T.F.'s teachers when
T.F. was in seventh grade.  Id. ¶ 37–38.

In the fall of 2012, T.F. matriculated to Portsmouth High
School for ninth grade.  T.F. Dep. at 82.  Once at the high
school, T.F. continued to encounter Kimber in the hallways.  Id.
at 81–82.  At some point during the first half of the school
year, Kimber sent a "friend request" to T.F. on Facebook.  T.F.
Dep. at 68–69, 71.  T.F. was initially "confused" by this
request, as she understood there to be a school policy that
prohibited a school employee and a student from being "friends"
on Facebook until after the student graduated.  Id. at 69–72.

She ultimately accepted the request because she "didn't think any harm could come of it."   Id.

In January of 2013, Kimber started sending Facebook messages to T.F.   Id. at 87.   Kimber and T.F. exchanged phone numbers, and Kimber began to send T.F. text messages.   T.F. Aff. at 1, Aug. 12, 2016 (doc. no. 52-2).   T.F. received messages from Kimber while at home, and believes that she sometimes also received message from Kimber while at school.   T.F. Dep. at 88.

Kimber soon started sending Facebook messages to T.F. with naked photos of himself, including photos of his penis.   Id. at 78, 87-88; T.F. Aff. at 1.   T.F. did not bring these photos to the attention of Shannon F. or anyone at the school.   T.F. Dep. at 85.   Nor did she, with one possible exception, inform any of her friends of these messages.   Id.   At some point, Kimber requested that T.F. send him photos in return.   T.F. Aff. at 1. T.F. complied by sending Kimber a Facebook message that included a naked photo of herself without her face showing.   T.F. Dep. at 77-78.

In late January or early February of 2013, Kimber sent T.F. a message on Facebook inviting her to his apartment to watch the Super Bowl.   Id. at 88-89, 93-94; T.F. Aff. at 1.   T.F. was at home when she received this message.   T.F. Dep. at 94.   T.F. agreed to meet Kimber and, on Super Bowl Sunday, walked to the

7

"Sherburne Store" a few blocks from her house in Portsmouth.
Id. at 89, 94; T.F. Aff. at 1.  Kimber picked T.F. up and
brought her to his apartment.  T.F. Dep. at 89.  Kimber gave
T.F. a tour of his apartment.  T.F. Aff. at 1.  He then brought
her to his bedroom, where they had a sexual encounter.  Id.; see
also T.F. Dep. at 89-90.  T.F. was fourteen years old at the
time.  T.F. Aff. at 1.  After the assault, Kimber dropped T.F.
back off at the Sherburne Store.  T.F. Dep. at 89.  Kimber
pursued additional sexual encounters with T.F., which she
refused.  Id. at 88.

At some point in late January or early February of 2013,
several of T.F.'s classmates "hacked" into her Facebook account
and discovered messages T.F had exchanged with Kimber.  T.F.
Dep. at 51-54.  Rumors began spreading at the high school
regarding an inappropriate relationship between T.F. and Kimber.
Id. at 50-51; T.F. Aff. at 1.  In early February of 2013, after
her sexual encounter with Kimber, T.F. sent an e-mail to several
of her teachers identifying herself as the student subject to
the rumors.  T.F. Dep. at 90-92; Donovan Dep. at 15, Dec. 9,
2015 (doc. no. 45-3).

The Portsmouth Police Department began investigating Kimber
for inappropriate contact with a student.  McDonough Aff. ¶ 6,
March 17, 2016 (doc. no. 42-2) ("McDonough Aff. II").  On

February 11, 2013, law enforcement informed the School District of its investigation.  Id.  The School District suspended Kimber on February 12, 2013.  Id. ¶ 7; T.F. Aff. at 1.  The Portsmouth Police Department arrested Kimber that same day.  McDonough Aff. II ¶ 8.  On February 19, 2013, the School District informed Kimber that his employment was terminated, with a retroactive effective date of February 13, 2013. Id. ¶ 9.

After Kimber's arrest, Thomas Lotz, director of IT for the School District, conducted a search of Kimber's computer.  Lotz Dep. at 33-34, Dec. 9, 2015 (doc. no. 43-3); Bernier Aff. at 1, June 29, 2016 (doc. no. 47).  Lotz discovered a hidden file stored on Kimber's hard drive, which automatically backed up to the School District server, containing several pornographic images, including images of Kimber.  Lotz Dep. at 33-35, 38-42; see also Bernier Aff. at 1.  There is no indication in the record that any images of T.F. were contained in this folder.  Nor is there any indication whether any of the images in this folder were the same as the photographs Kimber sent to T.F.

Additionally, there is at least some indication in the record that Kimber may also have sent T.F. graphic photographs via e-mail.  See McDonough Dep. at 25.  But see Lotz Dep. at 43; Heffner Dep. at 77-78, 80-81 (Mar. 8, 2016) (doc. no. 43-6).  Beyond certain inconsistent references to such e-mail, there is

no indication, beyond speculation by T.F. and Shannon F., that they were sent via a School District e-mail account.  <u>See</u> Heffner Dep. at 77; Lotz Dep. at 43; Lotz Aff. ¶ 8.

Finally, it is plain from the record that access to Facebook was blocked on the School District's network, <u>see</u> T.F. Dep. at 59; Kimber Dep. at 25, 28, 35, May 4, 2015 (Doc. no. 43-1); Lotz Aff. ¶ 10-11; <u>see also</u> Heffner Dep. at 109, but that Facebook could be accessed while at the school through an independent network such as a mobile network, Lotz Aff. ¶ 12; Heffner Dep. at 109; T.F. Dep. at 59.  There is no specific indication in the record that Kimber sent nude photographs to T.F. or that T.F. accessed these photographs or sent photographs of herself to Kimber through the School District network or during school hours. <u>See</u> Lotz Aff. ¶ 13-15.

Kimber ultimately pleaded guilty in state court to felonious sexual assault and other charges.  <u>See</u> Kimber Dep. at 50-51.  He was sentenced to a term of incarceration.  <u>See</u> <u>id.</u>

## Discussion

As noted, the plaintiff brings this action under 42 U.S.C. § 1983.  To state a claim for relief in a § 1983 action, a party must "establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed 'under color of state law.'"

10

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).
"It is beyond question that the Fourteenth Amendment protects
the right to bodily integrity and that right is necessarily
violated when a state actor sexually abuses a schoolchild." Doe
v. Fournier, 851 F. Supp. 2d 207, 219 (D. Mass. 2012), on
reconsideration in part (Mar. 20, 2012) (internal quotations and
ellipsis omitted) (quoting Doe v. Taylor Indep. Sch. Dist., 15
F.3d 443, 451-52 (5th Cir. 1994)) (other citations omitted).
Thus, the operative question here is whether Kimber was acting
under the color of state law when he sexually assaulted T.F.

A public employee acts under color of state law when he
"exercise[s] power possessed by virtue of state law and made
possible only because the wrongdoer is clothed with the
authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988)
(internal quotations omitted) (citation omitted). "[T]he under-
color-of-state-law element of § 1983 excludes from its reach
merely private conduct, no matter how discriminatory or
wrongful." Am. Mfrs. Mut. Ins. Co., 526 U.S. 40, 50 (internal
quotations omitted) (citations omitted).

This court has previously held that "public school
officials . . . act under color of state law when exercising
their official functions." Douglass v. Londonderry Sch. Bd.,
413 F. Supp. 2d 1, 2 (D.N.H. 2005).  Yet there is little

additional precedent from either this district or, seemingly, the First Circuit, defining what constitutes an "official function" for a public school employee.

Courts from other jurisdictions have held that "it is clear that a public school teacher acts under color of state law when he commits an act of assault or abuse against a student in his class, on school property and during the school day when the student is under the teacher's control or authority." Hackett v. Fulton Cty. Sch. Dist., 238 F. Supp. 2d 1330, 1356 (N.D. Ga. 2002) (citing, as examples, cases from the Third, Sixth, and Eighth Circuits). But when a public school teacher's employment "merely facilitates the development of a relationship" with a student, and the teacher later, "on his own time and independent from his official duties, commits an assault . . . ," the teacher "is not acting under color of state law." Id.

In determining where a particular assault of a student fits on this spectrum, several courts ask whether a sufficient "nexus" exists between the activity out of which the assault arose and the assaulter's duties and obligations as a public school official. See, e.g., Roe v. Humke, 128 F.3d 1213, 1217 (8th Cir. 1997); Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 452 (5th Cir. 1994); D.T. by M.T. v. Indep. Sch. Dist. No. 16 of Pawnee Cty., Okl., 894 F.2d 1176, 1188 (10th Cir. 1990); see

also Wilson v. Luttrell, 230 F.3d 1361 (6th Cir. 2000); Doe v.
Sch. Admin. Dist. No. 19, 66 F. Supp. 2d 57, 66 (D. Me. 1999);
Doe v. Manson, No. 99-262-P-DMC, 2000 WL 893396, at *3 (D. Me.
June 22, 2000).  Though this is inherently a fact-specific
inquiry, a review of these decisions suggests the following
dichotomy.  One the one hand, a "nexus" plainly exists if the
abuse occurred, in whole or in part, at school, during a school
function, or as a direct extension of a school function.  In
contrast, if the abuse did not occur on school property and
cannot be directly tied to some official school function (for
example, a sports team or an after-school club), then it did not
occur under color of state law.  Absent any First Circuit
authority to the contrary, the court will analyze the present
case through this prism.

     Preliminarily, the court concludes that a further
evidentiary hearing, as permitted by Rule 55(b)(2), is
unnecessary in this case.  The allegations in the plaintiff's
first amended complaint and the facts in the record are more
than sufficient for the court to resolve the plaintiff's motion.
Moreover, the plaintiff noted in her supplemental briefing that
she was not seeking further oral argument.  (Doc. no. 57, at 5.)

     The court turns, then, to the facts alleged in the
plaintiff's first amended complaint.  When determining whether a

default judgment is appropriate under Rule 55, the court may, as noted above, "examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action."  Ramos-Falcón, 301 F.3d at 2 (citation omitted).  "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688.1 (4th ed.); see also DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir.2007); Black v. Lane, 22 F.3d 1395, 1407 (7th Cir. 1994); Joe Hand Promotions, Inc. v. Patton, No. 10-cv-40242-FDS, 2011 WL 6002475, at *4 (D. Mass. Nov. 29, 2011).

Here, the plaintiff's allegations against Kimber are general and conclusory.  For instance, the plaintiff alleges that Kimber "used his position of trust and authority" as a School District employee "to groom T.F."  Yet beyond this assertion, the plaintiff does not allege any specifics as to how this grooming occurred or how it was furthered through Kimber's employment.  Similarly, the plaintiff alleges that Kimber "began to sexually, emotionally, and mentally abuse T.F" and that this abuse "occurred both on and off school property and began

14

through the use of school resources."  This allegation, which hews closely to the basic legal requirements to find that a school official acted "under color of state law," can at least arguably be construed as a restatement of one of the essential elements of a § 1983 claim rather than a well-pleaded allegation of fact.[3]

The court need not determine where these allegations fall, however, because to the extent they establish that Kimber acted under color of state law, such a conclusion is belied by the undisputed evidence in the record.  For instance, contrary to the plaintiff's assertion that Kimber's abuse of the plaintiff occurred "both on and off school property," there is no dispute in the record that Kimber and T.F. had a single sexual encounter and that it occurred during the weekend and away from school property.  There is similarly no dispute that Facebook was blocked on the School District's network, and there is nothing in the record to indicate that Kimber ever sent T.F. photographs either over the school network, during school hours, through his school-issued e-mail address, or using his school-issued computer.  And while it is undisputed that T.F. met Kimber

---

[3] The court does not address the allegations in paragraph 16 of the plaintiff's first amended complaint as they are clearly nothing more than conclusions of law.

through his affiliation with the school, and T.F. stated in her deposition testimony that she believes she "sometimes" received messages from Kimber while at school, there is nothing in the record supporting a conclusion that Kimber abused T.F. on school property or in connection with a school function, or that he otherwise "groomed" her during their interactions at school.[4] Simply put, a careful review of the considerable evidence in the record fails to reveal a sufficient "nexus" between Kimber's wrongful conduct and his role as a School District employee.

This conclusion is supported by the district judge's findings in his order on the School District's motion for summary judgment.  In that order, the district judge, reviewing the same general universe of evidence, specifically noted "the absence of any evidence that Kimber interacted with, stalked, or groomed T.F., or any other student, while in school hallways or the school's exercise facilities."  July 12, 2016 Order at 10. This finding is unequivocal, and is consistent with the undersigned's own review of the evidence in the record.  The

---

[4] It is well-established in the record that a folder was found on Kimber's school computer containing nude photos of himself and others.  As noted, however, there is nothing in the record to suggest that any of these photos were the same as those sent by Kimber to T.F. or received by Kimber from T.F.  Thus, it is unclear to the court how the existence of this folder relates to the plaintiff's claims against Kimber individually.

16

court accordingly cannot ignore this finding in reaching its

present recommendation.

The plaintiff contends that the court can limits is review

to the allegations in her first amended complaint.  (Doc. no 57,

at 5.)  The court disagrees.  For one, the District of

Massachusetts, citing First Circuit precedent, has held that "a

court may . . . consider any affidavits or evidence on the

record."  Amguard Ins. Co., 2016 WL 424961, at *1 (citing KPS &

Assocs., Inc., 318 F.3d at 17–20).  The court reads the cited

First Circuit opinion to support this holding and finds it to be

persuasive.

The court is also persuaded by the material similarities

between the default judgment standard under Rule 55 and the

motion to dismiss standard under Rule 12(b)(6).[5]  In the latter

context, courts are allowed to consider, among other things,

"documents the authenticity of which are not disputed by the

parties" and "documents central to the plaintiff's claims."  GE

---

[5] Compare Ramos-Falcón, 301 F.3d at 2 (noting that under Rule 55,
the court "may examine a plaintiff's complaint, taking all well-
pleaded factual allegations as true, to determine whether it
alleges a cause of action") with Foley v. Wells Fargo Bank,
N.A., 772 F.3d 63, 71 (1st Cir. 2014) (noting that under Rule
12(b)(6), the court must accept the factual allegations in the
complaint as true, construe reasonable inferences in the
plaintiff's favor, and "determine whether the factual
allegations in the plaintiff's complaint set forth a plausible
claim upon which relief may be granted").

Mobile Water, Inc. v. Red Desert Reclamation, LLC, 6 F. Supp. 3d 195, 199 (D.N.H. 2014) (quoting Rivera v. Centro Medico de Turabo, Inc., 575 F.3d, 10, 15 (1st Cir. 2009)).  The court sees no reason why it cannot consider similar documents in the present context, especially when, as here, those documents directly refute material allegations furthered in the plaintiff's complaint.

The court turns briefly to the plaintiff's supplemental briefing.  In this document, the plaintiff primarily relies on two cases — Lillard v. Shelby County Board of Education, 76 F.3d 716 (6th Cir. 1996) and Stoneking v. Bradford Area School District, 667 F. Supp. 1088 (W.D. Pa. 1987)[6] — in support of her contention that an entry of default judgment against Kimber is warranted.  While both of these decisions support the premise, accepted by this court, that the sexual assault of a student by a teacher can constitute a violation of the Fourteenth Amendment, neither supports a conclusion that Kimber acted under color of state law here.  Indeed, in both of these cases the alleged constitutional violations occurred on school property

_____

[6] Aff'd, 856 F.2d 594 (3d Cir. 1988), cert. granted, judgment vacated sub nom. Smith v. Stoneking, 489 U.S. 1062 (1989).

during school hours.  See Lillard, 76 F.3d at 726; Stoneking,
667 F. Supp. at 1090-91.

Nor, too, does the court accept the plaintiff's argument
that collateral estoppel requires an entry of default judgment
in this case.  The plaintiff argues that Kimber's guilty plea
establishes that the sexual assault occurred, and that the court
must therefore enter default judgment on this basis.  There is
no dispute, for the purposes of the present analysis, that
Kimber did in fact sexually assault T.F.  This does not,
however, mandate an entry of default judgment against Kimber,
because his criminal conviction does not necessarily mean that
the sexual assault occurred under color of state law.  Indeed,
the plaintiff has pointed to no facts from Kimber's criminal
proceeding, and the court can identify none in the record, that
would compel a different conclusion that the one reached herein.

### Conclusion

In sum, the court finds that the plaintiff's first amended
complaint, when considered in light of the evidence in the
record, fails to establish that Kimber was acting under color of
state law when he sexually assaulted T.F.  Even if the court
accepts the argument that Kimber's employment with the School
District facilitated the development of his relationship with
T.F., the assault itself occurred outside of school hours and

19

away from school property.  Further, there is nothing in the record to establish a sufficient "nexus" between Kimber's employment with the School District and the assault to allow recovery under § 1983.  The court accordingly recommends that the district judge deny the plaintiff's motion for default judgment.  (Doc. no. 52.)

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).


Andrea K. Johnstone
United States Magistrate Judge


January 27, 2017

cc:   Lawrence A. Vogelman, Esq.
      Kenneth Kimber, pro se